IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH DIBEE,

    Defendant,

Case No. 6:06-cr-60011
**ORDER AND OPINION**

AIKEN, District Judge:

Now before the Court is defendant's motion for release from custody. (doc. 264) For the reason's set forth below, the motion is DENIED, without prejudice.

**PROCEDURAL BACKGROUND**

Defendant Joseph Dibee is charged by a second superseding indictment with Conspiracy to Commit Arson in Violation of 18 U.S.C. § 844(n), Conspiracy to Commit Arson and Destruction of an Energy Facility in violation of 18 U.S.C. § 371, and Arson in violation of 18 U.S.C. § 844(i). (doc. 115)

Page 1 – ORDER AND OPINION

Prior to his indictment, defendant and his attorney met with government attorneys in Seattle, where he was presented with evidence implicating him in an arson that destroyed a meat packing plant. Following that meeting, but before his initial indictment, defendant left the United States and lived abroad for over 12 years until his eventual arrest in 2018.

After being detained and returned to the United States, defendant appeared before Magistrate Judge John Acosta for an initial appearance and detention hearing on August 10, 2018. (doc. 244) After a brief hearing, Magistrate Judge Acosta ordered defendant detained, finding that no condition or combination of conditions would reasonably assure the safety of the community or assure the appearance of defendant as required. (doc. 245)

Approximately 16 months after his initial detention, defendant moved for release from custody pending trial. (doc. 264) The Court heard argument on the motion on December 13, 2019 and ordered defendant released from custody with conditions. (docs. 270 and 271) The government filed an appeal of that decision to the Ninth Circuit Court of Appeals. The Ninth Circuit panel vacated this Court's order, holding that the incorrect standard was applied in deciding whether defendant should be detained as a flight risk. The Ninth circuit also noted that this Court failed to recognize on the record that a rebuttable presumption in favor of detention applied in this case. Finally, the panel ordered that defendant be held in custody while this Court reconsidered defendant's motion.

This Court then ordered defendant detained pursuant to that order and heard oral argument to reconsider the motion on December 23, 2019.[1]

## LEGAL STANDARD

The Court construes defendant's motion for release as an appeal of Magistrate Judge Acosta's order of detention. Review of a magistrate judge's release or detention order is *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).

The Bail Reform Act governs the detention of a defendant pending trial. 18 U.S.C. § 3142. The Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Id.*

When, as here, there is probable cause to believe that the defendant has committed an offense identified under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that "no condition or combination of conditions will

---

[1] In considering this motion, the Court examines the entire record which includes, but is not limited to, the indictment, the briefing submitted by the parties, as well as argument from both the December 13 and December 23 hearings.

reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008)

If a defendant proffers evidence to rebut the presumption in favor detention, a court can then consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The presumption is not erased when a defendant proffers evidence to rebut it. Instead, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.*; citing *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir.1986).

## DISCUSSION

As noted above, the Court recognizes that the rebuttable presumption in favor of detention as outlined by 18 U.S. Code § 3142(e)(3) applies here. The Court further finds that defendant has offered evidence to rebut the statutory presumption. The

Court now examines the factors outlined in 18 U.S.C. § 3142(g) to determine whether the detention standard has been met.

I.  *§ 3142(e)(3) Factors*

A.  *Nature and Circumstances of the Offense*

Defendant's actions were allegedly part of a larger conspiracy which caused numerous arsons in the late 1990s and early 2000s. Having sentenced and supervised many co-defendants' in this case, the Court is aware that the alleged offense conduct here was undeniably dangerous. The government alleges that defendant directly participated in arsons which resulted in the destruction of public and private property. This included designing and building incendiary devices used to commit arson the Cavel West Meat Packing Plant in 1997 and at the Bureau of Land Management Wild Horse Corrals near Litchfield, California. Defendant allegedly not only provided technical support for these acts, he also participated in the conspiracy by helping plan and execute the attacks.

The Court notes that much time has passed from the offense conduct, and the government has made no allegations that defendant has been involved in any similar activity since 2001. Consistent with this Court's previous statements about the offense conduct, the Court finds that this factor weighs in favor of detention. These alleged actions were incredibly dangerous. Not only did they result in property damage, but they also endangered human and animal life, regardless of whether any person or animal was actual harmed.

/ / /

B. *Weight of the Evidence*

Defendant has been indicted by a grand jury for the alleged criminal conduct. Given the amount evidence obtained through the testimony from various co-conspirators and the fact that all co-defendants, except one, have either negotiated resolutions or been found guilty by a jury, the Court finds that weight of the evidence here favors detention.

C. *History and Characteristics of the Person*

Defendant is an engineer by training and has worked previously in academia and natural resource extraction industries. Defendant argues that since the alleged conduct, he has sought to live a productive and law-abiding life. He explained that he has used his training since 2005 to help promote and develop renewable energy technology. While living in Russia, he also worked to with mining companies to develop more environmentally sensitive technology and practices. The defendant spoke at length during the December 13, 2019, hearing, and he detailed for the Court his work and passion for these causes.

The government concedes that while he lived abroad defendant tried to live a productive life. There is no evidence or allegations that defendant engaged in any illicit conduct during that time. The government argues, however, that defendant remained abroad for years despite his knowledge that he had been indicted on the present charges. Thus, it argues that defendant cannot claim that he has been rehabilitated when he spent years avoiding confronting the crimes for which he had been indicted.

Defendant does have ties this region. When first considering this motion, the Court released him with conditions to live with his sister and her husband in the State of Washington. They appear to be upstanding members of their community. Even so, the government points out that defendant had the same ties to that area when he first decided to flee the United States. The government also noted, that after defendant first left the United States, his sister, to whom he would be released, helped him dispose of his local property and later met with him while he was living abroad under indictment.

The circumstances around defendant's initial departure from the United States are also concerning to the Court. On December 7, 2005, federal agents served defendant with a grand jury subpoena. Two days later, defendant and his attorney met with a government attorney who outlined the evidence against him, in the hope that he would cooperate with the ongoing investigation. However, following the meeting, defendant burned several documents, which the government alleges were incriminating evidence. Defendant then had a friend drive him to Mexico. From Mexico City he flew to Lebanon and then to Syria where he had family connections. He then established residency in Syria and obtained a Syrian passport.[2] In 2010, defendant relocated Russia, because of political instability in Syria. Defendant eventually obtained residency status in Russia, and he was gainfully employed while

---

[2] The parties argue over the name which defendant used on his Syrian passport. While defendant's U.S. passport was issued in the name of Joseph Mahmoud Dibee, his Syrian passport was issued in the name of Yousef Deba. Defendant argues that he was not trying to conceal his identity, rather he simply using a Syrian spelling for the name.

living there. While there, he married and adopted a son, both of whom still reside in Russia.

In May 2018, defendant traveled from Russia to Cuba and then went to El Salvador. When leaving El Salvador, defendant was briefly detained because his biometric data matched information on outstanding warrants for Joseph Dibee. Due to confusion over the name in his Syrian passport, he was allowed to travel on to Cuba. After arriving in Cuba, defendant was ultimately detained by local authorities. When told that he was being detained on an Interpol notice, defendant requested asylum rather than be extradited to the United States.

The Court finds that defendant does have strong ties in Russia. His wife and adopted son continue to live in Russia, where he was gainfully employed for several years. While not a Russian citizen, defendant does have residency status in Russia, and he does have connections to Syria and an expired Syrian passport.

While living abroad defendant did seek to reach out to U.S. authorities more than once to offer unrelated information on various matters seemingly in the hope that the government would dismiss the charges against him or reach some other negotiated settlement.[3] The government emphasizes, however, that defendant never surrendered to face these charges, but rather he reported in court only when he was arrested by Cuban authorities.

---

[3] Many circumstances about these communications are disputed by the parties. The Court finds that it is unnecessary to resolve this dispute now. These questions are instead better left for sentencing should defendant be found guilty of the charges in the indictment.

Page 8 – ORDER AND OPINION

Given defendant's history as outlined in the record, the Court finds that this factor weighs in favor of detention.

D. *Nature and Seriousness of the Danger Posed by Release*

The government concedes that it must rely on the statutory presumption and defendant's conduct in the underlying offense from almost twenty years ago to show that he is danger to the community. Defendant argues there are no allegations that he has committed any dangerous criminal conduct since 2001 and that he has demonstrated extensive post offense rehabilitation while living abroad. Defendant has not engaged in dangerous activity since his release. Rather, he has engaged in work and activities that put his engineering skills to us in developing both renewable energy technology and cleaner energy production practices. This factor weighs in favor of release.

II. *Weighing Factors and Presumption of Detention*

Considering the evidence presented by the parties and testimony offered by the defendant, the Court finds that defendant has rebutted the presumption in favor of detention. Further, the government has failed to meet its burden of persuasion by clear and convincing evidence that defendant poses a danger to the community. There is simply no evidence that defendant has engaged in violent activity since the alleged offense conduct which ended in 2001. Moreover, after assessing the credibility of defendant based on his colloquy with the Court at the December 13, 2019 hearing, the Court finds that he does not pose a danger to the community.

The Court does find that the government has shown by a preponderance of evidence that defendant poses a flight risk and that no condition or combination of conditions will reasonably assure his appearance as required. Defendant clandestinely left the country as soon as he knew that he might face charges for the alleged conduct. Defendant has also avoided law enforcement for over a decade, and his actions over that time have shown that he took many steps to avoid facing the present charges even at the point he was detained when he requested asylum in Cuba. The Court is also mindful that although plaintiff has offered some evidence to rebut the statutory presumption in favor of detention, the presumption is still a factor which weighs against release. This, along with all the factors considered above lead the Court to find for continued detention.

## CONCLUSION

For the reasons set forth above, defendant's Motion for Release from Custody (doc. 264) is DENIED, without prejudice. It is further ordered that the government shall file a status report with the Court detailing defendant's present medical condition as well as the location and conditions of his current confinement within seven days of this order.

IT IS SO ORDERED.

Dated this 29th day of January, 2020.

_____
Ann Aiken
United States District Judge