IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

UNITED STATES OF AMERICA,

Case No. 6:06-cr-60011-AA
**ORDER AND OPINION**

v.

JOSEPH DIBEE,

Defendant,

AIKEN, District Judge:

Now before the Court is defendant's motion for release from custody. (doc. 301). For the reason's set forth below, the motion is DENIED.

**LEGAL STANDARD**

The Bail Reform Act governs the detention of a defendant pending trial. 18 U.S.C. § 3142. The Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the

community." 18 U.S.C. § 3142(e). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991) On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community. *Id.*

When, as here, there is probable cause to believe that the defendant has committed an offense identified under 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of ten years or more is prescribed, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e). Although the presumption shifts a burden of production to the defendant, the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008)

If a defendant proffers evidence to rebut the presumption in favor detention, a court can then consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or

the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *Hir*, 517 F.3d at 1086.

The presumption is not erased when a defendant proffers evidence to rebut it. Instead, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)." *Id.*; citing *United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986).

Consideration of detention "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g)

**DISCUSSION**

This is the second time that defendant has requested pretrial release from this Court, with his previous request ultimately being denied on January 29, 2020. (doc. 286). The procedural background of this case and that request is covered extensively in the previous order. Since denying that motion, the Court held a status conference to discuss the state of discovery and ensure defendant was receiving adequate medical for an injury suffered while incarcerated. (doc. 293)

The Court previously found that defendant had proffered evidence to rebut the presumption in favor of detention under 18 U.S.C. § 3142(e) and that the government had failed to meet its burden of persuasion by clear and convincing evidence that

defendant poses a danger to the community. (doc. 286). The Court also found that the government had met its burden of persuasion by a preponderance of evidence that defendant posed a flight risk and that no condition or combination of conditions would reasonably assure his appearance as required. *Id.*

In his present motion, defendant offers new arguments and evidence as to why he is not a flight risk and asks the Court to consider his risk of becoming infecting with the 2019 Novel Coronavirus ("COVID-19") as a basis for release. The government also presents new evidence that that defendant continues to pose a flight risk and is a danger to the community.

Initially, the Court addresses the new evidence presented by the government which is a translated transcript of a telephone call from defendant to his sister made on June 11, 2019 from FCI Sheridan where he was being held. Gov't Mem. in Opp. to Def's Mot. for Release. Ex. A. During the call, defendant conversed with his sister on a number of topics, asking her to speak only in Arabic. In the transcript, defendant detailed his frustrations with his incarceration and asked his sister to contact a lawyer for the purposes of suing individuals who work at FCI Sheridan. The translated transcript also shows defendant purportedly advocating "violence" against those individuals as well as referencing firing his attorney once he returned to Russia. Defendant argues that the transcript should be stricken due to disputes over the translation.

Because the call was partially in Arabic, a recording was sent to a government contractor, Advanced Language Systems International in Maryland, for translation

and transcription. The transcript was prepared by translator Mohamed Bennani. Problematic here is that U.S. Bureau of Prisons destroyed the audio recording of the June 2019 call pursuant to its standard policies.[1] The transcript is the only evidence before the Court regarding this incident.

Defendant disputes many of the key points in translation arguing that they contextually and linguistically do not make sense. For example, he argues that the translation of the word "violence" is inaccurate given the context of statement. He contends that it would be more "accurately translated as 'compulsion' or 'force' in the non-violent and non-physical sense of the word 'force.'" Def's Reply to Mot. for Release at 5. Rather than threatening violence against FCI Sheridan officials, defendant avers that he was expressing his desire to bring a lawsuit against them. He also testified that he spoke in Arabic on the call because he feared retaliation from officials at FCI Sheridan some of whom he alleges unduly restricted both his personal and legal mail.[2]

The Court does not strike the transcript due to the nature of this hearing, but, due to the underlying disputes over its accuracy and seeming contextual contradictions, the Court gives the document little weight in its consideration of this motion. As such the Court adopts its previous analysis and again finds that the

[1] The Court commends the government for its efforts to locate the recording of this call and the source of this translated transcript.

[2] Shortly after this call, defendant was transferred from FCI Sheridan to a different facility and has no issues with legal mail which he experienced at FCI Sheridan.

government has not shown by clear and convincing evidence that defendant poses a danger to the community.

Regarding flight, defendant offers several arguments in favor of his release, namely that he lacks the motive or the means to flee. He first argues that absconding from the United States to Russia where his wife and adopted son live would not possible for several reasons. First, defendant notes that that his passport is expired and is in the possession of his attorney who would turn it over to U.S. Pretrial Services if he were released. He also points out that his Russian residency permit has expired, and that he could not obtain one due to international detainers against him. If released, defendant argues that, given current border and travel restrictions, it would be possible to travel to Canada, apply for a Syrian passport, and then travel internationally to Russia.

Defendant also argues that he now realizes the need to resolve this case to be able to return his family in Russia permanently. He contends that when he initially fled, prosecutors made him believe that he was facing a 35-year sentence, whereas now he believes his potential sentence would fall within a much lower range. Defendant further believes that he has a strong argument for leniency at any sentencing hearing due his post offense rehabilitation. He also points out that he has already served many months in custody which would count towards his possible sentence. Defendant states that he is aware that all these mitigating facts would be lost if he fled.

Defendant further argues that he made sincere efforts to turn himself in previously. To support this claim, he submits evidence that he spent nearly $70,000 in legal fees to the law firm of Freedman, Boyd, Hollander, Goldberg, Ives & Duncan from April 2011 to April 2015 and from August 2015 to October 2016 in attempts to negotiate his surrender to U.S. authorities.

The government, while relying on the transcript on the June 2019 phone call, reiterates many of its previous arguments regarding flight risk, noting that defendant has the financial resources and ability to flee. The government also argues that while defendant may have spent considerable sums of money on legal representation, he never surrendered himself. He only now faces these charges because he was arrested in 2018 by Cuban authorities.

The Court has considered these arguments as well as those regarding the previous request for release. As before, the Court finds that defendant has offered evidence to rebut the statutory presumption in favor of detention under 18 U.S.C. § 3142(e). However, the Court still considers the presumption, along with the factors outlined in 18 U.S.C. § 3142(g): 1.) nature and circumstances of the offense, 2.) weight of the evidence, 3.) history and characteristics of the defendant, and 4.) Nature and seriousness of the danger posed by release. As in the previous order, the Court finds the first three factors weigh in favor of detention while the fourth weighs in favor of release.

As the Court noted at oral argument, this is a close call. While defendant spent a considerable sum of money for attorneys to negotiate with the government on his

behalf, he never surrendered himself. As the government contended, if he had wished to surrender himself, he could have done so at any point. Based on the record, it is doubtful that defendant would have ever returned to face these charges were he not arrested while traveling from El Salvador to Cuba. Even at the point of arrest in Cuba, he requested asylum from the Cuban government before being extradited to the U.S. The Court also notes that while he has ties in the Washington area, he also has admittedly strong ties to Russia, stronger than those when he secretively left the country over a decade ago.

Thus, when considering all the statutory factors and the presumption in favor of detention, the Court finds that detention remains appropriate in this case.

The Court however does take defendant's concerns regarding the COVID-19 outbreak very seriously. While there have been no confirmed cases at Inverness Jail, where defendant is being held, the Court is aware that individuals at custodial institutions are particularly vulnerable given their inability appropriately social distance or perform necessary surface cleaning and personal hygiene. Nonetheless release must be based on an individualized determination, and, at this time, the Court finds that defendant has not shown that he is acutely at risk for infection.

Defendant points to news reports that some county officials elsewhere in the state who have tested positive for COVID-19, as has an unidentified employee of the Multnomah County Sheriff's Office. However, it is unclear whether the individual referenced by defendant works in a jail setting.

While the Court recognizes that the Multnomah County Sheriff's Office has taken steps to keep COVID-19 at bay, the Court is also concerned with reporting regarding COVID-19 cases and testing availability in its facilities. Accordingly, the Court orders that the government shall file weekly status reports until the next hearing updating it on the status of COVID-19 cases which have been identified in the institution where defendant is being held. Should there be a significant change in those cases, the Court will reconsider defendant's motion for release.

**CONCLUSION**

For the reasons set forth above, defendant's Motion for Release from Custody (doc. 301) is DENIED, without prejudice. It is further ordered that the government shall file weekly status reports updating the court on COVID-19 cases at the institution where he is held until the next hearing in this matter. The first report shall be due Monday, April 27, 2020. Further, it is ordered that defendant shall continue to be held in the infirmary at Inverness, and he shall not be moved to another part of the institution without prior notice to the Court.

IT IS SO ORDERED.

Dated this 24th day of April, 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge