MATTHEW SCHINDLER, OSB# 964190
1500 SW 11th Ave Unit 2101
Portland, OR 97201
Phone: (503) 928-2548
FAX: (503)345-9372
E-mail: mas@schindlerdefends.com

ATTORNEY FOR DEFENDANT JOSEPH DIBEE

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br><br>vs.<br><br><br>JOSEPH DIBEE,<br>Defendant(s). | Case No. 6:06-cr-60011-AA-1<br><br>**REPLY TO GOVERNMENT RESPONSE TO DEFENDANT'S MOTION TO COMPEL** |

Joseph Dibee, through counsel, Matthew Schindler, replies as follows to the government's response to his motion to compel discovery.

### 1. The government's arguments about equal access to discovery are both incorrect and irrelevant.

The Court already knows that the government's characterization of the discovery, and Mr. Dibee's access to it, is wrong. Prior to current counsel's appointment, the Court held numerous status conferences and during many problems with discovery were discussed. When I was appointed, the very first issue I raised with the Court was the lack of indexes for the discovery. I argued from my entrance to this case that the prosecutor's decision the process that discovery outside

of the current protocols severely handicapped the defense and prevented the government from certifying that it had complied with the requirements of *Brady* and Rule 16. The basic lack of indexing, which caused me, and continues to cause me great concern, means no one knows what was produced. That includes the government.

For example, the government provided hundreds of pages of written notes and those hand written notes are not capable of optical character recognition. Not only was any automated search of those notes impossible, without an index, it was extremely tedious to correlate those notes with the reports, which were produced separately. When I complained to the government about the situation, their answer was to say that it did not need to give any of those notes to Mr. Dibee. My response was if you are giving us these notes then we need to know what they are and that these are all the relevant notes. Whenever the government would claim that it given us all the materials it had, I was always suspect because there was no index. How could it possibly know that what it had given us and what might have been overlooked without a master index?

Probably because of his late arrival, the most recent prosecutor does not know that the first production of discovery to Mr. Dibee was 130,000 consecutively numbered .tiff files. That is not even consistent with the way the government would have provided discovery in 2005. In 2005, my recollection was that the government was already producing PDFs. That is not what we received in this case. At the outset, this handicapped the defense because it required a review of every single page just

to determine what it was. Then, it had to be converted into a file format that could be subject to OCR (optical character recognition). The problem was that many of the images the defense was provided were a photocopy of a photocopy of a scan of a fax from 1996. As a result, the images were degraded, and even when converted to an OCR capable format, the OCR was often unreliable. This made worse the lack of an official index.

This is just one example of the problems that were created by the initial prosecutor's decision to process the discovery as an index bulk scan of images. That was not done in 2005 and would never be done today. I have worked with investigator and discovery expert Jay Myers on dozens of complex cases organizing and reviewing discovery. In this case, when I would ask Mr. Myers to find a particular report or reference in the discovery, this was the first time that Mr. Myers ever told me that he could not confidently say whether it was there or not because of these structural problems with the images that the government refused to address. Mr. Dibee's access to this information would have been substantially advanced if the government had just given me 130,000 pieces of paper.

The Court also knows that access is a relative term. For significant portions of the 2 ½ years that Mr. Dibee was incarcerated he had no access to the discovery both because his attorney refused to communicate with him, and the protective order prevented him from maintaining any copies himself. While Mr. Hood had access to what was produced, that says nothing about Mr. Dibee's access. When we did try to arrange meaningful access at the Courthouse, Mr. Dibee was soaked in tear gas and

developed respiratory problems that were only exacerbated when the government gave him COVID. Certainly, part of the reason the Court released Mr. Dibee was to allow him to have meaningful access to his discovery. Once Mr. Dibee had the real opportunity to review the materials it was evident that items were missing and that there were other issues with discovery that had never been raised before any Court. The mediation resolved the cases but did not resolve the overarching problems with discovery. Throughout, it was the mediator's position that he could not order the government to do anything.

The argument that Mr. Dibee got what everyone else got so the government has done all it needs to do is also meritless. Discovery is not a group or collective right. Both FRCP 16 and *Brady* are defined in terms of the individual for good reason. What is exculpatory as to Mr. Dibee and what must be produced under Rule 16 might be very different than what would need to be produced to a codefendant.

2. **The government ignores its responsibility to effectuate the defendant's constitutional right to discovery and information that is in its possession or control.**

"However, this case is no longer pending trial. Defendant seeks compulsion of discovery to use in arguing sentencing discretion. He cites no authority imposing a duty of discovery under this posture." Government Response at 3. Then the government goes on to say: "Brady holds plainly that evidence is discoverable where the evidence is material to punishment." Government Response at 5. Mr. Dibee is having difficulty reconciling those

two statements. *Brady* was a sentencing case that involved the defendant's right to information material to his punishment. What more authority does the government need? The idea that a defendant in a criminal case has no constitutional right to discovery material to his punishment was rejected by the Supreme Court in *Brady*.

The Supreme Court in *Brady* also rejected the same government argument that the requests were too speculative or not sufficiently material. The Court understood that a defendant reasonably might not know with certainty that (1) the information existed, (2) what it specifically was, and (3) who possessed it. It understood that because of the extraordinary difference in relative access and resources, the burden had to be on the government to produce this information irrespective of any request.

Materiality is not an exact science. It is a legal term of art requiring a lesser showing by a defendant specifically to contravene the argument the government leaps on here: Mr. Dibee's requests are speculative and his arguments for materiality are conclusory. *See* Government Response IIIA (He Has Offered Only "Conclusory Allegations of Materiality") *compare* United States Sentencing Guideline §5K2.0(a)(2)(B).

The government further ignores the importance of the District Court in regulating the conduct of the parties and enforcing discovery obligations,

when necessary, on the government. The Court is afforded wide discretion in how and when discovery is provided. The defense, out of deference to the usual practice in this district, spent countless hours evaluating and assessing the problems with the government's discovery and trying to work with the government towards solutions. That process reduced the outstanding issues to those covered by his motion to compel but it did not resolve all of them. That he did not litigate issues before the District Court has no impact on his right to information material to his sentence.

While Mr. Dibee has pleaded guilty, he has not implicitly or explicitly waived his right to information favorable to him that could influence the Court's discretion under § 3553. *See also United States Sentencing Guideline* §5K2.0(a)(2)(B). Given the current posture of the case and Mr. Dibee's guilty plea, any information of any kind that might warrant departure in Mr. Dibee's favor is Brady material that must be produced. *See* United States Sentencing Guideline §5K2.0(a)(2)(B) "UNIDENTIFIED CIRCUMSTANCES.—A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence". This guideline alone establishes the materiality of all of Mr. Dibee's requests.

Since Mr. Dibee does not possess or control any of that information, such a request necessarily involves some degree of speculation but saying so does not relieve the government of its constitutional responsibility to produce it. If I do not even have to ask for it in the first place, if the responsibility resides entirely with the government, characterizing the request as "speculative" is meaningless when the issue relates to something as broad as the Court's sentencing discretion.

**3.  The DOJ and State Department are the "government" for the purposes of this request.**

The government appears to be arguing that the State Department had no role in investigating or prosecuting the case, and therefore the Department of Justice has no obligation to obtain any information from the State Department. The government is wrong. Without the involvement of the State Department, Mr. Dibee could never have been arrested or prosecuted. The DOJ admits that it was in communication with the State Department then suggests that it has no responsibility to obtain information exchanged with the Cuban authorities.

If Mr. Dibee was subjected to inhumane conditions in Cuba and the United States knew it, that would be material to the sentence. Under these circumstances where there was clearly communication between the Department of Justice and the State Department about an American fugitive

defendant and his arrest, then the information surrounding that, and the arrangements necessary to make it happen are discoverable. The government's desire to conceal this information only enhances Mr. Dibee's argument for it to be produced. What is it hiding?

Further, it is not as though Mr. Dibee is arguing for information from the Department of the Interior or from the Department of Defense. He has specifically requested information that the DOJ has confirmed it knows exists from a department of the government that was responsible for arranging or negotiating his arrest on this warrant so the DOJ could prosecute him. They are both connected to this case in a more than *de minimus* manner. So if the State Department was providing information regarding this investigation to the Cuban government, and that was influencing their treatment of him, Mr. Dibee should be provided that information. He also believes that the Court would want to know when it sentences him if the United States had some role in the torture he experience in Cuba. That is neither a speculative request nor immaterial to what the Court must decide when it sentences Mr. Dibee.

That the United States suddenly trusts the veracity of Cuba's authoritarian regime, the same one it has fought against for generations, makes its reliance on these reports especially suspect. In the Cuban Reports which the government cites as "evidence" Mr. Dibee was not only not mistreated

they also falsely claim that Mr. Dibee was a spy for Syrian Intelligence Service. Some of this information including the Cuban Report's bogus characterization of his personality was included up in his PSR as though it came from a legitimate psychological evaluation. The government's reliance on this information fortifies Mr. Dibee's argument that this information is material and should be produced.

### 4. What is important to Mr. Dibee is important to the Court.

There is almost no limit on what the Court can consider when it sentences Mr. Dibee under the statutory mandate of 18 USC § 3553(a). When the government refuses to produce information material to the exercise of that discretion it unlawfully cabins that discretion. Because government misconduct is not excluded from consideration under the statute or the advisory guidelines, it is evidence from which Mr. Dibee could argue a departure under the guidelines or a reduction under §3553. Therefore, such information is material and exculpatory under *Brady* and must be produced to the defendant.

### 5. Conclusion:

Mr. Dibee needs to hear on the record that what the government claims does not exist, in fact does not exist. That representation cannot be delegated to a retired FBI agent, it is the prosecutor's duty, even if he is the fifth one

assigned to the case, not the agent's, to confirm that *all* Brady obligations are met. If the government wants more prison time from Mr. Dibee, it must produce the evidence he can use to argue for less.

Respectfully submitted on July 26, 2022.

*s/Matthew Schindler*
Matthew A. Schindler, OSB#964190
Attorney for Joseph Dibee